```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                       SOUTHEASTERN DIVISION


UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )
                                 )
      v.                         )      No. 1:07 CR 105 CAS
                                 )                      DDN
DANNY RAY HART,                  )
                                 )
            Defendant.           )
```

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

　　This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on August 13, 2007.

　　Defendant Danny Ray Hart has moved to suppress evidence (Doc. 23) and to suppress identification testimony (Doc. 24). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

　　1.　On July 17, 2006, a cooperating individual (CI), who was working with undercover Cape Girardeau, Missouri, Police Officer Daniel Seger, arranged to buy a half-ounce of crack cocaine from Melissa Adams in Bertrand, in Mississippi County, Missouri. The arrangement was for Seger and the CI to meet Adams and an individual identified only as "Pookie D" at 104 Cedar Street in Bertrand to do the transaction. Other officers surreptitiously watched as Seger drove an undercover car with the CI in the front passenger seat to Bertrand. Seger parked in the agreed upon parking lot; soon thereafter a black male drove into the lot in a blue Chevrolet extended cab pickup truck and parked approximately 10 yards away; Adams was the front seat passenger in the blue truck. The two vehicles were parked parallel and heading in the same direction.

　　2.　After the blue truck was parked, Adams got out of the passenger's seat and walked over to Seger's car. When she got out of

the truck, Seger could clearly see[1] the truck's driver; Seger watched the driver for a couple of seconds before Adams closed the truck's passenger door.

3. Adams walked over to Seger's car and around to the passenger's door to meet with the CI whom Adams knew. At that time the CI took the crack cocaine from Adams and gave her the money.

4. At that time Seger asked about buying a quarter or a half ounce of crack cocaine for $500. Adams said, "We'll see. Pookie D is nervous." Seger gave the CI the money for another transaction and the CI gave it to Adams. Seger also spoke with Adams about purchasing ounce quantities of crack. Adams then returned to the passenger side of the truck and opened the door. Again, Seger could clearly see, through the open passenger door, the black male who was driving the truck. Adams and the driver spoke. Then Adams returned to Officer Seger's undercover vehicle. Adams told Seger that a new transaction was possible, that "he" is "heavy now", and that he should call when he was ready to buy the crack cocaine. Adams then walked back to the blue truck, opened the passenger side door, allowing Officer Seger another view of the black male driving the truck, and got in. Each time the passenger door of the truck was opened, Officer Seger looked at the truck's driver to be able to identify him later. The blue truck was then driven away.

5. After the transaction was over, Officer Seger drove himself and the CI to the Southeast Missouri Drug Task Force office in Sikeston, Missouri. In this office, Officer Seger was shown an enlarged Missouri driver's license photograph of defendant Danny Ray Hart, Government Exhibit 1. Officer Seger immediately, positively, and with certainty identified the photograph as that of the black male driver of the blue truck, whom he knew as "Pookie D." Sometime later Officer Seger interviewed Melissa Adams. She told him that Pookie D had been the black male who drove her to the transaction on July 17, 2006, and that he had been her source of the drugs.

---

[1]The time was early evening, but there was still sufficient daylight for Officer Seger to clearly see the driver of the truck.

6. The transaction in the parking lot on July 17, 2006, took a total of approximately 5 minutes. Although the sun had set during the transaction, Officer Seger, who did not wear glasses, could see the driver of blue truck clearly. Before the July 17, 2006, transaction, Officer Seger had never seen Danny Ray Hart.

7. On June 21, 2007, a federal grand jury issued its indictment in this action, charging defendant Danny Ray Hart with aiding and abetting the cocaine distribution on July 17, 2006. A federal arrest warrant was issued upon this indictment.

8. On July 12, 2007, Charleston, Missouri, Police Officer Keith Bickford applied for and received from Missouri Associate Circuit Judge Scott T. Horman a search warrant for 713 West Marshall Street in Charleston. Gov. Ex. 2. The application, in describing the place to be searched, stated in part that the front door faced to the north. In support of the application, Officer Bickford submitted his sworn, written affidavit. The affidavit stated that on July 9, 2007, Officer Bickford was told by a confidential informant that the informant had been at 713 W. Marshall St., the residence of Danny R. Hart, and saw Hart with a large quantity of crack cocaine. The affidavit also described a July 11, 2007 "controlled purchase" of crack cocaine from Hart by the informant for $40. The affidavit, in describing the place to be searched, stated on its first page, different from the application, that the front door faced to the "west." Page 2 of the affidavit described the front door as facing "north." Id. Affidavit at 1-2. Based upon this affidavit, on July 12, 2007, Judge Horman issued the search warrant for 713 W. Marshall, authorizing the seizure of many items related to trafficking in crack cocaine, and the seizure of firearms and related items:

> 1. Crack cocaine, materials, equipment, and paraphernalia used for the sale, distribution, ingestion, possession, and transportation and manufacture of crack cocaine; record of sales and proceeds of sales of crack cocaine; telephone records of transactions relating to the distribution and ingestion of crack cocaine; and computer records of transaction (sic) relating to the distribution and ingestion of crack cocaine, including any computer disks[,] hard drives, CD-ROMs.
>
> 2. Any firearms . . . .

The warrant also stated in part that the front door of 713 W. Marshall faced to the north.  Id. Search Warrant at 1.

    9.   On July 13, 2007, at approximately 5:13 a.m., Officer Bickford and some five officers executed the search warrant at 713 W. Marshall.  The front door of the residence faced to the north, Defendant's Exhibit 1, as set forth in the warrant and the application for the warrant.  The officers announced their presence as entry was being made, for the safety of the officers.  After the officers forced entry into the residence, they found Hart in his bedroom.  Not only was the residence searched but Hart was arrested upon the outstanding federal arrest warrant.  After his arrest, $205 were seized from Hart's pants pocket.

    10.  Officer Joseph Rapert participated in the execution of the warrant by serving as the seizing officer.  Items A through Q, as listed on the Search Warrant Inventory,[2] were seized from Hart's bedroom and all were reasonably believed to be evidence of trafficking in crack cocaine.  Id. Search Warrant Inventory at 1-2; Gov. Exs. 3, 4.

    11.  Inventory Items R through NN were seized from other parts of the residence.  Items R (marijuana chopper) and S (box of baggies) were reasonably believed to be evidence of drug trafficking.  Items T through NN were electronic appliances, cameras, DVD players, and computer equipment.  Id. at 2.  Among them were items reasonably believed to be components of the residence's security system.       Also, Item JJ, a brief case which contained financial records was seized as reasonably falling within the scope of the search warrant description pertaining to "record of sales and proceeds of sales of crack cocaine."  Other than the security system equipment and the brief case with financial records, Officer Rapert seized Items T through NN because he speculated that, by the number and nature of the items, they were given to Hart as payments for the cocaine he sold.

---

[2]These items included plastic baggies, clothing and wallet with cash, photo of video surveillance equipment, marijuana, scales, false soda can with crack cocaine, two cell phones, $1,600 in cash, marijuana and pills, assorted other pills, and a glass pipe with marijuana residue.  Gov. Ex. 2 Search Warrant Inventory at 1-2.

11. From an outbuilding near the residence, the officers seized many tools and equipment, identified in the Search Warrant Inventory as Items 1 through 31.  <u>Id.</u> Search Warrant Inventory at 2-3.  These items were seized because the police speculated that they also had been given to Hart as payments for cocaine.  Items 29 and 30, tanks of Freon gas, were later determined by the police to have been stolen and have been returned to their owners.

12. No firearms were found or seized in the execution of the warrant.

## **DISCUSSION**

Defendant has moved to suppress the physical evidence acquired by the government (Doc. 23) and to suppress the identification testimony of Officer Seger (Doc. 24).

### Cocaine sold on July 17, 2006

The contraband crack cocaine which defendant sold to the cooperating individual and Officer Seger on July 17, 2006, should not be suppressed as evidence against defendant.  Because defendant voluntarily sold it to the CI for the undercover officer, the Fourth Amendment is not implicated.  <u>See</u> <u>United States v. Corona-Chavez</u>, 328 F.3d 974, 980-81 (8th Cir. 2003).  Moreover, the Fourth Amendment does not protect people from observation in places where they have no reasonable expectation of privacy.  <u>Minnesota v. Carter</u>, 525 U.S. 83, 91 (1998).

### Officer Seger's identification testimony

Any anticipated testimony by Officer Seger identifying defendant as the driver of the blue truck on July 17, 2006, should not be suppressed.  The government has stated that it will not offer into evidence in its case-in-chief at trial the officer's identification of the Missouri driver's license photograph.  (Doc. 29 at 2.)  The government does anticipate having Officer Seger identify defendant in the courtroom at trial as the person who drove the blue truck and who was the source of the crack cocaine.  To the extent the displaying to

the officer of the single photograph of defendant played a part in the officer's identification of defendant, the law is clear that such a single subject showup is unduly suggestive under the Fifth Amendment. Stovall v. Denno, 388 U.S. 293, 302 (1967). However, the balance of the required analysis calls for the court to determine whether the identification was or, in this case, would be reliable nevertheless. Neil v. Biggers, 409 U.S. 188, 198-99 (1972).

Reliability depends upon (1) the witness' opportunity to view the suspect at the time of the crime; (2) the witness' degree of attention at the time of the crime; (3) the accuracy of the witness' description of the suspect prior to the identification; (4) the witness' level of certainty at the time of the identification; and (5) the length of time between the crime and the identification. Manson v. Brathwaite, 432 U.S. 98, 114-16 (1977).

In this case Officer Seger had repeated viewings of defendant during the sale of the crack cocaine on July 17, 2006. On at least four occasions, the officer was able to view defendant clearly through the open passenger door. Because he was then performing professional undercover police duties, his degree of attention to the driver of the truck was heightened. Further, he testified during the evidentiary hearing, and the undersigned credits his testimony, that he was and is very certain about his identifying defendant as the driver. His identification of defendant is corroborated by the subsequent interview information of Melissa Adams that defendant was the driver of the blue truck and her drug source.

### Issuance of the search warrant

The search warrant was lawfully issued. The issue before this court when reviewing the legal sufficiency of the basis for the issuance of a search warrant is whether the issuing judge had a substantial basis for concluding that probable cause existed for the issuance of the warrant. United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994); United States v. Martin, 866 F.2d 972, 976 (8th Cir. 1989) (citing Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).

In this case the affidavit presented Judge Horman with a substantial basis for finding probable cause to believe Hart was illegally trafficking in crack cocaine out of 713 W. Marshall. The affidavit described the statement of the informant about Hart having a large quantity of crack cocaine at 713 W. Marshall on July 9, 2007, and then described the controlled purchase of crack cocaine from Hart there on July 11. The successful purchase of crack cocaine and the controlling procedures used by the police in the transaction sufficiently corroborated the earlier statement by the cooperating individual to render him or her reliable. See United States v. Durham, 470 F.3d 727, 733 (8th Cir. 2006).

The first, incorrect description in the search warrant of the place to be searched as having its front door facing "west" does not require the suppression of evidence. This word was an obvious mistake that was corrected on page 2 of the affidavit. The affidavit's correct statement of the door facing north was a substantial basis for the issuing judge to also identify the location to be searched in that way.

## Execution of the search warrant

Some of the items seized in the execution of the search warrant should not be suppressed; other items should be suppressed. Inventory Items A through S should not be suppressed. These items were clearly within the scope of the search warrant supported by probable cause.

Items may be lawfully seized under the Fourth Amendment, even though they are outside the lawful scope of the search warrant, under the plain view doctrine when the item's incriminating character is immediately apparent. Horton v. California, 496 U.S. 128, 136-37 (1990); United States v. Hughes, 940 F.2d 1125, 1127 (8th Cir. 1991). The incriminating nature of an item is immediately apparent if the officer has probable cause to associate it with criminal activity. United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995). Probable cause demands not that an officer be sure or certain, but only that the facts available to a reasonably cautious person would warrant a belief that certain items may be contraband, stolen property, or useful as evidence of a crime. Id. The pieces of security equipment seized by the

police should not be suppressed. The incriminating character of the residence's security system was immediately apparent. See United States v. Urkevich, 408 F.3d 1031, 1037 (8th Cir. 2005) (the presence of surveillance cameras and monitor equipment, among other items, supported the jury's finding of a conspiracy to distribute methamphetamine); see also United States v. Lee, 356 F.3d 831, 837 (8th Cir. 2003) (surveillance cameras are associated with the drug trade). The function of this equipment was reasonably and immediately seen as supporting the illegal drug trafficking going on inside the residence.

Also, Item JJ, a brief case which contained financial records, reasonably falls within the scope of the search warrant pertaining to "record of sales and proceeds of sales of crack cocaine."

On the other hand, Items T through NN and 1 through 31, other than the security system equipment and Item JJ, should be suppressed. These items were seized based only upon the officers' speculation that they were consideration for drugs or their speculation that the items were stolen (which turned out to be true for two of the items). The search warrant affidavit did not provide the issuing judge a substantial basis for believing that these items were related to the criminal conduct otherwise described in the affidavit. Only money was described in the affidavit as the consideration given for the drugs.

Whereupon,

**IT IS HEREBY RECOMMENDED** that the motion of defendant to suppress evidence (Doc. 23) be denied as to Inventory Items A through S, the residence's security equipment, and Item JJ. As to the rest of the seized items, the motion to suppress (Doc. 23) should be sustained.

**IT IS FURTHER RECOMMENDED** that the motion of defendant to suppress identification testimony (Doc. 24) be denied.

The parties are advised they have until September 3, 2007, to file written objections to this Report and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

/S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 21, 2007.